**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HERBERT LEE, JR.,

    Petitioner,                        CASE NO. 2:08-CV-11170
                                            HONORABLE NANCY G. EDMUNDS
v.                                         UNITED STATES DISTRICT JUDGE

RAYMOND BOOKER,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DENYING CERTIFICATE OF APPEALABILITY**

**I. Introduction**

This is a habeas case brought by a state inmate under 28 U.S.C. § 2254. Herbert Lee Jr., ("Petitioner"), is currently confined at the Ryan Correctional Facility where he is serving four concurrent terms of 25-to-50 years in prison, and a consecutive two-year term.[1] The sentences result from his Wayne Circuit Court convictions for three counts of first-degree criminal sexual conduct, MICH. COMP. LAWS 750.520b(1)(a), one count of assault with intent to commit rape, MICH. COMP. LAWS 750.520g(1), and one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS 750.227b,

---

[1]When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Mound Correctional Facility, but he has since been transferred to the Ryan Correctional Facility. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards v. Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 U.S.C. § 2254. Therefore, the Court substitutes Warden Raymond Booker in the caption.

respectively. Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Michigan Attorney General's Office, has filed a response, arguing that Petitioner's claims lack merit and are procedurally barred. For the reasons which follow, the petition will be denied.

## II. Background

Petitioner's convictions arise out of allegations that he sexually assaulted his young daughter. At trial, the victim testified that she moved out of her mother's abusive home to live with Petitioner and her step-mother and her family. Life with her father was preferable in many respects: he bought her clothes, furnished a bedroom for her, sent her to school, and took her to the doctor. But the victim testified that her father also fought with her step-mother and abused alcohol.

The victim testified that in November of 2000, her father argued with her step-mother and the fight ended with Petitioner firing a handgun into a wall and her step-mother and her family fleeing the house. The victim was alone in the house with Petitioner. He went into her bedroom and announced that he was going to kill himself. The victim chased after him, told him that she loved him, and begged him not to hurt himself. Petitioner relented but demanded to have sex with the victim instead. Out of fear that Petitioner might shoot her with the gun, the victim allowed Petitioner to engage in vaginal and oral sex with her.

The victim testified that on February 21, 2001, Petitioner forced her to engage in vaginal intercourse again on a day that she was not at school. The victim testified that both rapes caused her physical pain. So when in March of 2001 Petitioner told her that he expected her to be naked in her room when he returned from dropping her step-mother off

for work so that they could have sex, she decided that she had had enough and called 9-1-1. A recording of the 9-1-1 tape was played for the jury. Petitioner was then arrested and the victim was placed in a foster home.

Marie Lee testified that she was Petitioner's wife. She confirmed that a fight occurred in November of 2000 that ended with her fleeing the house with her own family members, but she denied that she saw Petitioner shoot a gun into a wall. Instead, she testified that Petitioner punched his fist through a wall. Investigator John Wolfe testified that he interviewed Marie, and she told him that Petitioner did in fact fire a gun in the house.

Audrey Lee, Petitioner's sister, testified that she visited Petitioner's home in the afternoon of February 21, 2001. She testified that the victim was the only person home, and that she appeared normal, not upset, and did not act at all out of the ordinary.

Petitioner testified in his own defense. He described the financial difficulty in trying to provide a home for his wife and her family, and that the burden increased when the victim moved into the home. He testified that he nevertheless tried to provide a good home for her. She had few clothes, so he bought her a new wardrobe. He purchased a bedroom set for her, and signed her up for school.

Petitioner testified that the victim had trouble in school and got into fights. As a result, rather than beat her as her mother had done, Petitioner tried to talk to her about her problems. Nevertheless, the victim was troubled, and she would become particularly withdrawn after her weekend visitations with her mother.

Petitioner acknowledged the fights he had with his wife. He testified that he was troubled by the fact that her side of the family was not pulling their weight, and this led to

heated arguments. He testified that in one particularly bad encounter he asked his wife and her family to leave and he injured his hand when he punched his first through a wall. He acknowledged that he had a problem with alcohol, but he categorically denied that he ever sexually assaulted his daughter.

The jury chose to believe the victim and found Petitioner guilty as charged.

Following sentencing, Petitioner was appointed appellate counsel who filed an appeal by right. Petitioner's brief on appeal raised three claims:

> I. [Petitioner] was denied his Ams V and XIV rights of due process and his Am VI right to a fair trial when the trial court admitted evidence of [Petitioner's] alleged prior bad acts.
>
> II. [Petitioner] was denied his Ams V and XIV rights of due process when the prosecutor vouched for his own witnesses.
>
> III. [Petitioner] was denied his Ams V and XIV rights of due process and his Am VI right to effective assistance of counsel by the failure of counsel to move in limine to remove [Petitioner's] record from the Department of Corrections' website.

The Michigan Court of Appeals issued an unpublished opinion affirming Petitioner's convictions. *People v. Lee*, No. 246418 (Mich. Ct. App. June 24, 2004).

In August of 2004, Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims that he raised in the Court of Appeals, as well as two new claims:

> I. Did the prosecution violate [Petitioner's] right to due process and a fair trial by destroying [Petitioner's] wife's credibility during voir dire and opening argument before the witness had an opportunity to give testimony? 6, 14 Amendments.
>
> II. Did the prosecution suborn perjury by allowing the plaintiff to testify falsely under oath?

The Michigan Supreme Court denied Petitioner's application for leave to appeal

4

because it was not persuaded that the questions presented should be reviewed. *People v. Lee*, No. 126819, (Mich. Sup. Ct. January 31, 2005).

In July of 2005, Petitioner filed a motion for relief from judgment in the trial court and raised the following claims:

> I. [Petitioner] was denied his Ams VI and XIV rights to the effective assistance of counsel by the failure to raise the issue on the violation of the Confrontation Clause of the Sixth Amendment. This failure violated [Petitioner's] Fourteenth Amendment rights to due process and the equal protection clause and denied [Petitioner] full access to the court.
>
> II. Counsel's refusal to file a motion for a *Ginther* hearing denied [Petitioner] his VI and XIV Ams rights to the effective assistance of counsel and the due process and equal protection clause and access to the court.

On April 12, 2006, the trial court issued an opinion and order denying Petitioner's motion for relief from judgment. Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals. The Court of Appeals denied Petitioner's application "for failure to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D)." *People v. Lee*, Court of Appeals No. 271420 (Mich. Ct. App. Jan. 31, 2007).

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, but it was also denied under MICH. CT. R. 6.508(D). *People v. Lee*, Michigan Supreme Court No. 133485 (Mich. Sup. Ct. July 30, 2007).

Petitioner has now filed an application for writ of habeas corpus that raises the following claims:

> I. Petitioner was denied his Fifth and Fourteenth Amendment rights of due process and his Sixth Amendment right to a fair trial when the trial court admitted evidence of defendant's alleged prior bad acts.
>
> II. Petitioner was denied his Fifth and Fourteenth Amendment rights of due process when the prosecutor vouched for his own witnesses, and his Sixth Amendment right to a fair trial.

III. Petitioner was denied his Fifth and Fourteenth Amendment rights of due process and his Sixth Amendment right of effective assistance of counsel by the failure of trial counsel to move in limine to remove Petitioner's record from the Department of Corrections web site.

IV. Did the prosecutor violate Petitioner's Fifth and Fourteenth Amendment rights to a fair trial when the prosecutor destroyed Petitioner's wife's credibility during voir dire and opening argument before this witness had an opportunity to give testimony.

V. Did the prosecutor violate Petitioner's Fifth and Fourteenth Amendment rights to due process and Sixth Amendment right to a fair trial by the prosecutor suborning perjury by allowing the plaintiff to testify falsely under oath.

### III. **Standard of Review**

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set

6

of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. Analysis

### A. Admission of Prior Bad Acts Evidence

Petitioner's first claim asserts that the trial court erroneously allowed the prosecutor to elicit testimony that Petitioner fired a gun in the house prior to the first sexual assault. He asserts that both he and his wife dispute that a gun was ever fired, and that it was unnecessary to the prosecutor's case and was unfairly prejudicial. Respondent argues that the claim is procedurally defaulted and not cognizable on federal habeas review.

The Michigan Court of Appeals found that Petitioner had violated state procedural law by failing to contemporaneously object to the gunshot testimony under M.R.E. 404(b) at trial. As a result, the state appellate court reviewed the claim under the "plain error" standard. *Lee*, *supra*, at 1.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87(1977). Such a procedural default occurs when a petitioner fails to comply with a state procedural rule, the rule is relied upon by the state courts, and

7

the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005). Procedural default may be excused where the petitioner demonstrates cause and prejudice for his failure to comply with the state procedural rule, or when a petitioner establishes that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Combs v. Coyle*, 205 F.3d 269, 274 (6th Cir. 2000).

Petitioner's prior-bad-acts claim was procedurally defaulted by virtue of his failure to object to the introduction of the gunshot evidence in the trial court which resulted in appellate review under the more restrictive "plain error" standard. It is well-established that the Michigan Court of Appeals' application of plain-error review constitutes the invocation of an independent and adequate procedural rule that bars federal review of the merits of his claim absent a showing of "cause and prejudice." *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009).

Petitioner does not attempt to demonstrate cause to excuse his default, and therefore the court need not address the issue of prejudice. See *McCleskey v. Zant*, 499 U.S. 467, 502 (1991). Yet even if Petitioner had established cause, his showing of prejudice would fall short because his defaulted claim does not present a cognizable issue. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

The admission of "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith*, 280 F. Supp. 2d 704, 716

(E.D. Mich. 2003). Morever, appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002).

In the present case, evidence that Petitioner fired a gun into a wall was not admitted as propensity evidence, but was admitted to show the victim's fear and explain her failure to resist Petitioner or report his conduct to the authorities. The victim testified that when Petitioner raped her he placed the gun under the mattress of her bed. The proximity of the weapon and the fact that Petitioner had just fired it and threatened to take his own life if she did not have sex with him, was relevant to explain her actions. Petitioner fails to show that the trial court's admission of this evidence deprived him of his fundamental right to a fair trial or resulted in any other violation of his constitutional rights. Accordingly, petitioner is not entitled to habeas corpus relief with respect to his first claim.

## B. Prosecutorial Vouching

Petitioner's second claim asserts that the prosecutor vouched for the credibility of the victim during closing argument. Respondent asserts that this claim is also procedurally defaulted because Petitioner did not object to the challenged remarks at trial.

Like Petitioner's first claim, the Michigan Court of Appeals limited its review of this claim to the plain error standard due to Petitioner's failure to make a timely objection at trial. Accordingly, it is also subject to procedural default, and Petitioner has not attempted to demonstrate cause to excuse the default. But even if the claim were not defaulted, Petitioner would not be entitled to relief because the claim is meritless.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted); *See also Griffin v. Berghuis,* 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004). It is worth noting that

the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d at 537 and n. 43. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F. 3d 422, 433 (6th Cir. 2002).

Numerous cases have held that a prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel,* 133 Fed. Appx. 159, 165 (6th Cir. 2005); *U.S. v. Parker,* 49 Fed. Appx. 558, 563 (6th Cir. 2002); *See also Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003)(prosecutor did not engage in improper vouching when he argued that there was no evidence that prosecution witness had "axe to grind" or any other improper motive, when he asked rhetorically whether person who would burn 19-year-old female's body to destroy evidence would give truthful testimony, or when he asked whether prosecution witnesses had any reason to lie).

Petitioner first challenges the prosecutor's argument relating to the rebuttal testimony of the victim's foster-mother that the victim had a reputation for being a truthful person. Trial Tr. IV, at 20. During the cross-examination of the victim, defense counsel challenged the credibility of the victim. Accordingly, the prosecutor was permitted to rehabilitate its witness with opinion testimony regarding the victim's reputation for being truthful. M.R.E. 608(a). The comment was not an expression of the prosecutor's personal belief, but properly referred to evidence presented at trial regarding the victim's reputation.

Next, Petitioner challenges the prosecutor's argument that the jury should believe

the victim's testimony because by accusing Petitioner the victim lost the support of her father's side of the family:

> So this child virtually has no family, nobody who cares about her. And yet she's not taking it back, she's not saying I lied I made it all up, let's put my life back together again so I can have a family again. She's not saying that because she's telling the truth about the allegations. So I think based on all of those things that I've just gone through you should have no doubt that this child is telling the truth.

Trial Tr. IV, at 12.

This argument did not suggest to the jury that the prosecutor had hidden knowledge or had a personal belief that the victim's testimony was truthful. Rather, the argument asserted that the negative effect the victim's accusation against Petitioner had on her relationship with her remaining family and her steadfastness despite those effects gave a reason for the jury to believe her. Defense counsel's cross-examination of the victim suggested that she fabricated her accusations as a way to get back at her father for attempting to instill discipline. The challenged argument properly responded to this suggestion by pointing out that the evidence demonstrated that the victim had more to lose by going to the authorities than she had to gain. Accordingly, even if Petitioner's second claim were not procedurally defaulted, it would not provide a basis for granting habeas relief.

## C. Failure of Counsel to Remove Petitioner's Information for Department of Correction's Website

Petitioner's third claim asserts that his trial attorney provided ineffective assistance of counsel when he failed to file a motion prior to trial to have Petitioner's previous conviction for first-degree criminal sexual conduct removed from the Michigan Department of Correction's website. Respondent asserts that the claim is procedurally defaulted and without merit.

Petitioner raised this claim in his direct appeal, but his appellate brief did not cite any authority standing for the proposition that the trial court had the authority to order the Michigan Department of Corrections to block access to Petitioner's prior conviction record on their website. Accordingly, the Michigan Court of Appeals found that Petitioner had "abandoned" the claim:

> Defendant cites no authority to support his contentions that trial counsel's failure to file a motion in limine to remove defendant's record constituted ineffective assistance of counsel, or that the trial court would have had a basis for granting such a motion. An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, and he may not give an issue cursory treatment with little or no citation of supporting authority. *People v. Watson*, 629 N.W.2d 411 (Mich. App. 2001). By his failure to cite any relevant authority, defendant has abandoned this issue. *Id*.

*Lee*, *supra* at 3.

First, with respect to this claim, Petitioner clearly failed to comply with state procedural rules concerning preservation and presentation of claims in the Michigan Court of Appeals. *See Santiago v. Booker*, 2010 U.S. Dist. LEXIS 51217, 44-45 ( E.D. Mich. May 25, 2010); *Belanger v. Stovall*, 2009 U.S. Dist. LEXIS 66303, 59-60 ( E.D. Mich. July 31, 2009); *Marchbanks v. Jones*, 2009 U.S. Dist. LEXIS 54303 (W.D. Mich. June 26, 2009)("a

review of Michigan cases shows that the principal of abandonment is regularly applied and is a ground independent of the merits.") Accordingly, like Petitioner's previous claims, this one is also procedurally defaulted, and Petitioner has not attempted to demonstrate cause to excuse it.

However, also like Petitioner's previous claims, even if Petitioner demonstrated cause, he would not be entitled to relief because he cannot demonstrate prejudice. "Prejudice, for purposes of procedural default analysis, requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002) (*citing United States v. Frady*, 456 U.S. 152, 170-71). Petitioner's speculation that a juror might have looked-up his profile on the Department of Corrections website, without more, does not demonstrate actual prejudice. Following jury selection, the trial court instructed the jury that they were "not allowed to discuss with anyone nor permit anyone to say anything to you or in your presence about the case." Trial Tr. at 107. They were also instructed that they were only allowed to "consider the evidence which has been properly admitted in this case." Trial Tr. at 108-109. Jury's are presumed to have followed their instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). There is nothing in the record to suggest that the jurors disregarded these instructions or the instructions that were given to them at the close of trial that they could only consider the evidence presented at trial in reaching their verdict. That is, Petitioner had failed to demonstrate that any alleged error resulted in actual prejudice. Accordingly, if even Petitioner's second claim were not procedurally defaulted, it would not provide a basis for granting habeas relief.

**D. Prosecutor's Attack on the Credibility of Petitioner's Wife During Jury Selection and Suborning Perjured Testimony from the Victim.**

Petitioner's fourth claim asserts that the prosecutor committed misconduct when during the jury selection process and during opening statement, she attacked the credibility of Petitioner's wife before she testified. His fifth claim asserts that the victim's statements at the sentencing hearing that she received a sexually transmitted disease from Petitioner were false, and therefore the prosecutor suborned perjury. These claims were presented for the first time to the state courts in Petitioner's application for leave to appeal filed in the Michigan Supreme Court during Petitioner's direct appeal. The claims did not appear in Petitioner's motion for relief from judgment or the appeal that followed from it. Respondent argues that the claims are therefore procedurally defaulted because they were never presented to the Michigan Court of Appeals and Petitioner no longer has a state court remedy available to satisfy the exhaustion requirement.

Before this Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (*cited by Duncan v. Henry*, 513 U.S. 364, 365 (1995). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system. *Duncan*, 513 U.S. at 365-66; *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking

one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Presentation of an issue for the first time on discretionary review to the state supreme court does not fulfill the requirement of "fair presentation." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Applying *Castille*, the Sixth Circuit holds that a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals, but raises it for the first time on discretionary appeal to the state's highest court. *See Hafley*, 902 F.2d at 483.

Here, Petitioner raised these two claims only on discretionary review to the Michigan Supreme Court. The claims therefore were not exhausted on direct appeal. Petitioner subsequently filed a motion for relief from judgment in the trial court, but he did not include the instant two claims. As a consequence, Petitioner has failed to meet the exhaustion requirement with respect to these claims.

"If the claims presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred." *Cone v. Bell*, 243 F.3d 961, 967 (6th Cir. 2001) (*citing Coleman*, 501 U.S. at 752-53), rev'd on other grounds, 535 U.S. 635 (2002). Under Michigan law, Petitioner has no remaining remedies, as he is barred from filing a second motion for relief from judgment. *See* MICH. CT. R. 6.502(G)(1) (permitting only one such motion). The Court therefore must consider whether there exists cause and prejudice excusing Petitioner's failure to fairly present his last two claims in state court. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). To show cause sufficient to excuse a failure to raise his habeas claims, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his

motion for relief from judgment. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

Petitioner fails entirely to assert cause excusing his default. While he argued in the Michigan Supreme Court that he wanted his appellate counsel to raise these claims during his appeal of right in the Michigan Court of Appeals, even if such an argument were accepted, it would not explain why Petitioner failed to raise the claims himself in his motion for relief from judgment. He raises no objective factor preventing him from asserting his claims in that collateral proceeding. The claims are therefore barred on habeas review.

## IV. Conclusion

The Court will deny the Petition for Writ of Habeas Corpus. The Court will also deny Petitioner a Certificate of Appealability. Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny a Certificate of Appealability because Petitioner has failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

## V. Order

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED that a Certificate of Appealability is **DENIED.**

        **s/Nancy G. Edmunds**
        **Nancy G. Edmunds**
        **United States District Judge**

**Dated: December 7, 2010**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on December 7, 2010, by electronic and/or ordinary mail.**

        **s/Carol A. Hemeyer**
        **Case Manager**